UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LESTER WOODARD,

       Petitioner,

v.                                 Case No. 3:18-cv-445-MMH-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

## ORDER

### I. Status

Petitioner Lester Woodard, an inmate of the Florida penal system,
initiated this action on March 30, 2018,[1] by filing a Petition for Writ of Habeas
Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Woodard
challenges a 2003 state court (Duval County, Florida) judgment of conviction
for burglary of an unoccupied dwelling and dealing in stolen property. Woodard
asserts five grounds as his basis for seeking relief. See Petition at 12-23.[2]
Respondents have submitted a memorandum in opposition to the Petition. See
Response (Response; Doc. 17) with exhibits (Resp. Ex.). Woodard filed a brief

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned
by the Court's electronic docketing system.

in reply. <u>See</u> Petitioner's Reply to Respondents Response Under 28 U.S.C.S. § 2254(d) and (c) Evidentiary Hearing Requested (Reply; Doc. 19). This case is ripe for review.

## II. Relevant Procedural History

On July 7, 2003, the State of Florida (State) charged Woodard with burglary of an unoccupied dwelling (count one) and dealing in stolen property (count two). Resp. Ex. 1 at 23. Following a trial, a jury found Woodard guilty as charged, with a specific finding as to count one that the structure Woodard burglarized was a dwelling. <u>Id.</u> at 56-57. On September 8, 2003, the circuit court adjudicated Woodard to be a habitual felony offender (HFO) and prison releasee reoffender (PRR) and sentenced him to a term of incarceration of thirty years in prison, with fifteen-year minimum mandatory sentences as to both counts. <u>Id.</u> at 77-83. The circuit court ordered count two to run concurrently to count one. <u>Id.</u>

Woodard appealed his convictions and sentences to Florida's First District Court of Appeal (First DCA). <u>Id.</u> at 95. His appellate counsel filed an <u>Anders</u>[3] brief, <u>see</u> Resp. Ex. 4, and Woodard filed a pro se initial brief, in which he asserted there was insufficient evidence to convict him of both counts, <u>see</u>

---

[3] <u>Anders v. California</u>, 386 U.S. 738 (1967).

Resp. Ex. 5. On September 20, 2004, the First DCA per curiam affirmed Woodard's convictions and sentences. Resp. Ex. 6.

On January 24, 2005, Woodard filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. 7 at 1-26. In the Rule 3.850 Motion, Woodard argued that his counsel was deficient for failing to file a motion to suppress (ground one) and two motions to dismiss (grounds two and three). Id. Woodard further argued that police illegally interrogated him (ground four) and violated his Fourth Amendment rights (ground five). Id. On March 3, 2006, the circuit court denied relief on the Rule 3.850 Motion. Id. at 27-30. The First DCA per curiam affirmed the denial of relief without issuing a written opinion on June 23, 2006, and issued the mandate on August 29, 2006. Resp. Ex. 9.

On October 26, 2006, Woodard filed a second Rule 3.850 Motion (Second Rule 3.850 Motion). Resp. Ex. 10 at 1-52. In the Second Rule 3.850 Motion, he raised various claims that the police violated the Fourth Amendment when they searched his residence and his personal property. Id. The circuit court denied the motion. Id. at 53-54. Woodard moved for rehearing, which the circuit court also denied. Id. at 55-62. On September 5, 2007, the First DCA per curiam affirmed the denial of relief, and on October 4, 2007, issued the mandate. Resp. Ex. 12.

On August 28, 2008, Woodard filed a petition for writ of habeas corpus in federal court pursuant to § 2254. Resp. Ex. 13. The district court denied the petition on August 11, 2011. Resp. Ex. 14. Thereafter, on June 27, 2013, Woodard returned to state court and filed a third motion for postconviction relief (Third Rule 3.850 Motion), which he later amended. Resp. Ex. 15 at 1-22. In the Third Rule 3.850 Motion, Woodard argued that the circuit court failed to give a requested jury instruction. Id. On March 25, 2015, the circuit court denied relief. Id. at 33-38. Woodard appealed the decision but on May 27, 2015, he voluntarily dismissed that appeal. Resp. Ex. 16.

On May 11, 2015, Woodard filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) (Rule 3.800(a) Motion), in which he contended that his adjudication as an PRR on count two was illegal. Resp. Ex. 17 at 1-4. On April 5, 2017, the circuit court granted the motion and struck the PRR fifteen-year minimum mandatory term as to count two but left the remaining aspects of the sentences intact. Resp. Ex. 18 at 1-2. Woodard filed a successive federal habeas petition, which the district court dismissed without prejudice and instructed Woodard to seek authorization from the Eleventh Circuit. Resp. Ex. 19. Woodard sought such authorization, but the Eleventh Circuit determined he did not need authorization because his petition was not successive in light of the fact that the state court had entered

a new judgment when it granted his Rule 3.800(a) Motion. Resp. Ex. 20. Woodard then filed the instant Petition.

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Woodard's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

# V. Governing Legal Principles

## A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[4] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited

---

[4] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346,

351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to

preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[5] supra, at 747–748, 111 S. Ct. 2546; Sykes,[6] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

the procedural default "must result from some objective factor external to the defense that prevented

---

[5] Coleman v. Thompson, 501 U.S. 722 (1991).
[6] Wainwright v. Sykes, 433 U.S. 72 (1977).

11

> [him] from raising the claim and which cannot be
> fairly attributable to his own conduct." <u>McCoy v.
> Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992)
> (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[7]
> Under the prejudice prong, [a petitioner] must show
> that "the errors at trial actually and substantially
> disadvantaged his defense so that he was denied
> fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>,
> 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice,
> there remains yet another avenue for him to receive
> consideration on the merits of his procedurally
> defaulted claim. "[I]n an extraordinary case, where a
> constitutional violation has probably resulted in the
> conviction of one who is actually innocent, a federal
> habeas court may grant the writ even in the absence
> of a showing of cause for the procedural default."
> <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This
> exception is exceedingly narrow in scope," however,
> and requires proof of actual innocence, not just legal
> innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171
> (11th Cir. 2001).

---

[7] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that

counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

## A. Ground One

In Ground One, Woodard alleges that his trial counsel provided ineffective assistance when she failed to object and request a mistrial when the prosecutor made a comment during closing arguments that allegedly shifted the burden of proof. Petition at 12-15. Specifically, he contends the following statement amounted to impermissible burden shifting:

> The defendant told you his name was Mac, the defendant didn't describe what Mac looked like. The defendant had no explanation as to what he looked like or who Jit is, or what he looked like.

Id. at 12. According to Woodard, this "comment drew attention to the fact that Mr. Woodard had not proven the existence of Mac and Jit, and implied he had an obligation to do so." Id. at 12-13. Woodard further asserts that this statement was a comment on facts not in evidence because neither the prosecutor nor his counsel asked him to describe Mac or Jit. Id. at 13-14.

Respondents assert, Response at 13-23, and Woodard concedes, Petition at 24, that he failed to properly exhaust this claim. Woodard, however, argues that his failure to exhaust should be excused in light of Martinez. Petition at 24. According to Respondents, Woodard has failed to establish that this claim is a "substantial claim" and, thus, Martinez is inapplicable. Response at 15-17.

The Eleventh Circuit has explained the holding of Martinez as follows:

> In <u>Martinez</u>, the U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim. 566 U.S. at 8, 13-14, 132 S.Ct. at 1315, 1318. The Supreme Court, however, set strict parameters on the application of this exception. It applies only where (1) state law requires a prisoner to raise ineffective-trial-counsel claims during an initial collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim. <u>Id.</u> at 14, 132 S.Ct. at 1318; <u>see also</u> <u>Arthur v. Thomas</u>, 739 F.3d 611, 629 (11th Cir. 2014) (setting forth the <u>Martinez</u> requirements).

<u>Lambrix v. Sec'y, Fla. Dep't of Corr.</u>, 851 F.3d 1158, 1164 (11th Cir. 2017). A claim is substantial if it "has some merit." <u>Martinez</u>, 566 U.S. at 14. For purposes of determining whether postconviction counsel was ineffective, a petitioner "must show more than the mere fact they failed to raise potentially meritorious claims; he must show that <u>no competent counsel</u>, in the exercise of reasonable professional judgment, would have omitted those claims." <u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1263 (11th Cir. 2014) (emphasis in original).

In order to determine whether this claim is a substantial one, the Court turns to the merits of Woodard's argument and a review of the trial transcripts. The record reflects that Timothy Sheffield, a security officer at Shands

17

Hospital, went to work early in the morning of April 28, 2003. Resp. Ex. 2 at 122-23. While at work, he received a call that his home had been burglarized. Id. at 123-24. Upon hearing the news, Sheffield returned home to find his door had been kicked open, his house in disarray, and several of his possessions missing. Id. at 124. Among the missing items were a DVD player with a DVD entitled House of a Thousand Corpses inside it, several DVDs and CDs, a backpack, and his work badge and patches. Id. at 124-30.

Law enforcement developed Woodard as a suspect and determined that he was residing in a motel room leased in the name of Leslie Foster. Id. at 160-61, 170. The motel manager told police that no one other than Foster and Woodard were staying there. Id. at 170. They obtained consent from Foster to search the motel room, in which they discovered a bag with Sheffield's hospital badge, CD cases, and CDs with Sheffield's name written on them. Id. at 162-65, 174. In questioning Foster, officers learned that Woodard brought property to the motel room on at least two occasions and that he had pawned a DVD player the same day Sheffield's DVD player was stolen. Id. at 177-78. Foster told the officers that she did not know where the property had come from but that she had suspicions that Woodard had stolen the items. Resp. Exs. 2 at 177-78; 3 at 209. Upon being arrested and interviewed, Woodard denied knowing anything about the burglary or pawning items, asserted Foster had

18

nothing to do with the burglaries, and stated a motel room neighbor had given him the property. Resp. Exs. 2 at 171, 180-82, 200; 3 at 207.

The next day, officers continued their investigation at a pawn shop within a mile from Sheffield's home and Woodard's motel room. Resp. Ex. 2 at 132, 183-84, 187. At the pawn shop, officers recovered Sheffield's DVD player, which still had the DVD entitled a House of a Thousand Corpses inside it. Id. at 184-86, 197. Officers also discovered that Foster had earlier pawned a different DVD player and some jewelry at the same pawn shop. Id. at 193-94, 196-97. The pawn ticket,[8] which had Woodard's name, fingerprint, and signature on it, included the same serial number as the DVD player with the movie still in it. Resp. Exs. 2 at 184-85; 3 at 212-16, 222, 227. The transaction occurred on the same date as the burglary at 10:50 a.m. Resp. Ex. 3 at 212, 215-16.

Foster, who described herself as Woodard's girlfriend at the time of the incident, testified that she moved from Daytona Beach to Jacksonville with Woodard because Jacksonville was his hometown. Resp. Ex. 2 at 138-39. Foster testified that they first stayed at the home of Woodard's brother, but she could not remember the location of the house or the name and age of Foster's brother. Id. at 140, 148-49. Then they bought a motel room only for the two of them at

---

[8] The pawn shop's store manager testified that this transaction was a thirty-day pawn, not a sale. Resp. Ex. 3 at 210, 218.

the Relax Inn, which was approximately half a mile away from Sheffield's residence. Id. at 131-32, 140. Foster admitted to smoking crack while staying at the motel. Id. at 149-51. According to Foster, Woodard was not in the motel room the morning of April 28th when she woke up. Id. at 140, 154. However, she saw Woodard later that day when he returned to the room with a bag and a DVD player that he claimed he got from a friend. Id. at 142-42, 155. The next day, JSO contacted her and when she returned to the motel, she observed Woodard in the back of a patrol car. Id. at 142-43. Foster consented to a search of the motel room, which was in her name and for which she was paying. Id. at 143, 149. Foster testified that Woodard had pawned a DVD player on April 28th prior to him returning to the motel room. Id. at 145-46. On cross-examination, she admitted to previously pawning some items with Woodard while in Jacksonville. Id. at 150, 152. While Woodard was in custody, Foster acknowledged that she wrote letters to him and they had a phone conversation during which Woodard told her not to come back to Jacksonville or talk with anyone because it could cause him to go to prison. Id. at 146-47.

Woodard, an eight-time convicted felon, also testified at trial, contradicting testimony from Foster and law enforcement. Resp. Ex. 3 at 231-44. Woodard denied living with Foster in Daytona Beach or even being her boyfriend. Id. at 232-33, 245. Instead, he claimed he met her at a gas station, and they drank beer and smoked crack in her motel room along with Foster's

brother, Mac, Mac's girlfriend, and a younger man named Jit. Id. at 232-34. Woodard maintained that they never stayed at his brother's house, because his brother had a stroke and was in a nursing home. Id. at 234. According to Woodard, Foster and he drove to Mac's house and while he stayed in the car, Foster went into the house, later returning with a DVD player, camcorder, and jewelry. Id. at 235-36. Foster told him that this property belonged to Mac. Id. at 236, 241. Woodard denied burglarizing Sheffield's home or even going to it. Id. However, he admitted that he went to the pawnshop with Foster three times, during which he pawned a DVD player at Foster's request because she did not have her identification. Id. at 235-38. Notably, on recall, Foster testified that she had a valid driver's license and never told Woodard that she did not. Id. at 253-55. Woodard admitted that he gave the pawn shop his identification, signed the pawn slip, and gave his fingerprints, but he claimed he had no idea the property was stolen. Id. at 243. Woodard testified that he pawned the item instead of selling it because it was his understanding that Foster or her brother wanted to eventually retrieve the DVD player. Id. at 237-38.

Discussing his arrest, Woodard testified that an officer asked if he had pawned anything that day and Woodard told the officer he had not. Id. at 240. Woodard maintained that the officer only asked him about pawning items that day, not over the prior week, which is why he answered in the manner he did. Id. Additionally, Woodard maintained that he never told police that Foster had

nothing to do with the burglary. Id. at 240-41. In fact, Woodard testified that he told the officers that Foster was the one who had acquired the camcorder, jewelry, and DVD player. Id. at 241.

During closing arguments, defense counsel initially argued that Foster could not describe Woodard's brother despite her testimony that they stayed at his brother's house for a couple of days prior to their stay in the motel. Resp. Ex. 3 at 274. Counsel explained:

> And I asked her about his brother, well, we stayed two nights with his brother, then I left[.] How did you pay? Oh, I paid for a taxi[.] What did he look like? I don't know[.]

Id. Thereafter, in rebuttal, the prosecutor made the following comments:

> Now this mysterious brother Mac was in Jacksonville[.] Miss Foster who this is her relative says that Mac lives in Quincy, Florida, which is over by Tallahassee[.] Last time she saw him was a couple weeks ago at a family gathering[.] The defendant told you his name was Mac, the defendant didn't describe what Mac looked like[.] The defendant had no explanation as to what he looked like or who Jit is, or what he looked like[.]

Id. at 294. In her reply closing, defense counsel stated:

> And the State just made a big deal about he couldn't describe Mac and I didn't ask him to describe Mac and I didn't ask him to describe the Jit and neither did the State Attorney ask him to describe him[.] Not very good lawyering on my part, but I didn't ask him that[.] She couldn't -- I asked her, I didn't say, "Please describe him in detail," I said, "What did he look like?" And she couldn't do that[.]

Id. at 312-13. Following the parties' closing arguments, the circuit court instructed the jury that Woodard is presumed innocent and the State must carry the burden of proof on each element of each count. Id. at 322-24.

For purposes of federal habeas review, "a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Parker v. Matthews, 567 U.S. 37, 45 (2012) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). During closing arguments, "it is improper for a prosecutor to make comments that would shift the burden of proof to the defendant or otherwise suggest that the defendant has an obligation to produce evidence or prove innocence." United States v. Smith, 697 F. App'x 944, 956 (11th Cir. 2017). However, "a prosecutor may 'assist the jury in analyzing, evaluating, and applying the evidence' and, therefore, may 'urge[ ] the jury to draw inferences and conclusions from the evidence produced at trial." United States v. Adams, 339 F. App'x 883, 886 (11th Cir. 2008) (quoting United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984)).

Having reviewed the evidence produced at trial, the court finds that this claim is not a substantial claim such that Woodard's failure to exhaust should be excused under Martinez. The prosecutor's comments on Woodard's failure to give a detailed description of Mac or Jit are more properly characterized as

an attack on Woodard's credibility on the defense theory as opposed to a burden-shifting comment. Even if considered as an improper burden-shifting comment, Woodard cannot demonstrate prejudice. The identity and description of these individuals were collateral matters not directly related to proving Woodard's guilt or innocence as to the elements of either count. The circuit court also properly instructed the jury on the burden of proof. More importantly though, the State provided extensive evidence of Woodard's guilt via Foster's testimony, documentation from the pawn shop, Woodard's possession of stolen property, and his statements following his arrest. In light of the above, the prosecutor's comment did not "'so [infect] the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Parker</u>, 567 U.S. at 45 (quoting <u>Darden</u>, 477 U.S. at 181). There is no reasonable probability that the circuit court would have granted a mistrial had counsel objected to these challenged arguments. Woodard has failed to establish deficient performance or prejudice, and, therefore, has failed to establish he is entitled to relief under <u>Martinez</u>. Accordingly, the claim in Ground One is due to be denied.

## B. Ground Two

Woodard asserts that his counsel was deficient for failing to object to the State's motion in limine that prevented counsel from commenting on unavailable witnesses. Petition at 15-17. According to Woodard, granting the

motion in limine resulted in Woodard being unable to present a complete defense. Id. Specifically, he contends that he "should have been permitted to explain that there were two juvenile co-defendants charged in his case who were unavailable for trial" and that such evidence "could have shed light on how the burglary of Mr. Sheffield's residence occurred and could have testified to Mr. Woodard's lack of involvement." Id. at 16. Woodard avers that this motion prevented him "from discovering and presenting evidence of how and why there were two juvenile co-defendants in this case." Id. Additionally, he claims that the State committed a Brady[9] violation when it failed to disclose the identities of the two juvenile co-defendants. Id. at 17.

Respondents assert that Woodard failed to exhaust this claim. Response at 13-14, 17-19. Woodard recognizes that he failed to exhaust the claim but argues that his failure to exhaust should be excused pursuant to Martinez. Petition at 24. Accordingly, the Court will review the merits of the claim to determine whether the claim in Ground Two is substantial. The record reflects that before trial the State filed a motion in limine pursuant to Haliburton v. State, 561 So. 2d 248 (1990). Resp. Ex. 1 at 30. In the motion, the State requested that the circuit court prevent the defense from discussing or introducing evidence that the State failed to call two juvenile co-defendants.

---

[9] Brady v. Maryland, 373 U.S. 83 (1963).

Id. The State noted that both juveniles had outstanding warrants for their arrest, but as of yet neither was located and arrested. Id. Woodard's counsel did not object to the motion and the circuit court granted it. Resp. Ex. 2 at 109-10.

Under Florida law, "'an inference adverse to a party based on the party's failure to call a witness is permissible when it is shown that the witness is peculiarly within the party's power to produce.'" Haliburton, 561 So. 2d at 250 (quoting Martinez v. State, 478 So.2d 871, 871 (Fla. 3d DCA 1985)). Here, the record shows that the State did not have dominion and control over the two co-defendants and, in fact, could not locate them. As such, any objection to the motion in limine would have been pointless in light of Haliburton, and, therefore, counsel cannot be deemed deficient for failing to object. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

For the same reason, the State's inability to locate the co-defendants defeats Woodard's Brady claim. To establish a Brady claim, a petitioner must demonstrate: "'(1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain

the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different.'" Riechmann v. Fla. Dep't of Corr., 940 F.3d 559, 580 (11th Cir. 2019) (quoting United States v. Stein, 846 F.3d 1135, 1145-46 (11th Cir. 2017)). Here, the record reflects that the government did not possess the information needed to locate the two co-defendants. Moreover, the existence of these co-defendants was known to counsel and Woodard prior to trial, thus it cannot be said the State suppressed this information. Woodard has also failed to establish the final element of a Brady claim because his theory of prejudice relies solely on speculation that these two co-defendants could have benefited his case. In the absence of evidence otherwise, it is equally possible that they could have implicated Woodard further. Accordingly, Woodard's Brady claim fails. See id. For the above reasons, Woodard has failed to establish the existence of a substantial claim of deficient performance, as such this claim is unexhausted. Therefore, relief on the claim in Ground Two is due to be denied.

### C. Ground Three

Next, Woodard contends that his trial counsel was ineffective for failing to argue as to count two that Woodard was not aware that the DVD player he pawned was stolen. Petition at 18-20. Woodard maintains that he testified at trial that "he relied in good faith on Ms. Foster's assurances that her family

owned the DVD player and he was authorized to pawn it." Id. at 18. According to Woodard, the fact that he pawned it and did not sell it demonstrated that he intended to retrieve the DVD player later. Id. Woodard avers that had counsel made this argument and had the circuit court given an "inferential jury instruction regarding adequate explanation of possession of recently stolen property," he would have been acquitted. Id. at 19.[10]

Again, Respondents assert that Woodard failed to exhaust this claim, Response at 13-14, 19-20, which Woodard does not dispute. Petition at 24. Instead, Woodard contends his failure to exhaust should be excused under Martinez. Accordingly, the Court reviews the merits of the claim to determine whether it is a substantial claim. In count two, the State charged Woodard pursuant to section 812.019(1), Florida Statutes, which states that a person is guilty of a second degree felony if he or she traffics, or endeavors to traffic, in property that he or she knows or should know was stolen. At trial, Woodard testified that he was unaware the property was stolen. Resp. Ex. 3 at 235-38, 241-43. During closing arguments, his counsel specifically argued Woodard was not aware the property he was pawning was stolen and Foster used Woodard to pawn the stolen goods. Id. at 277-89. The record, therefore, refutes

---

[10] As to this latter claim regarding the jury instruction, Woodard raises this as Ground Five of the Petition; therefore, the Court will address that claim in detail below.

Woodard's contention that his counsel failed to argue he was unaware the property was stolen. Indeed, the jury heard both evidence and argument on this very matter. As such, Woodard has failed to establish deficient performance or prejudice. The claim is both meritless and unexhausted, and relief on the claim in Ground Three is due to be denied.

## D. Ground Four

In Ground Four, Woodard argues that his trial counsel rendered ineffective assistance of counsel because she failed to obtain surveillance footage from the pawn shop, which he claims would have shown that Foster attempted to pawn the DVD player before he did. Petition at 20-22. According to Woodard, this video would have corroborated his testimony that he believed he was not pawning stolen property and would have hurt Foster's credibility. Id. at 21.

Respondents assert, Response at 13-14, 20-21, and Woodard concedes, Petition at 24, that Woodard failed to exhaust this claim in state court. Nevertheless, as with his other claims, Woodard maintains that he should be entitled to have this claim heard on the merits pursuant to Martinez. Upon review of the merits of this claim, the Court finds that it is not a substantial claim. As an initial matter, the Court finds this claim is speculative because Woodard has presented no evidence that a surveillance video existed, and merely speculates that if it did exist it would have helped his case. Speculation

cannot form the basis of an ineffective assistance of counsel claim. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). Moreover, even if a video existed and it showed Foster unable to pawn the DVD player, this would not have established Woodard's innocence because the video would not have established that Woodard did not know the items were stolen. Accordingly, Woodard has failed to establish prejudice. In light of the above, this claim is not substantial and, therefore, is unexhausted. As such, the claim for relief in Ground Four is due to be denied.

## E. Ground Five

In his last ground for relief, Woodard alleges that his trial counsel was deficient for objecting to a jury instruction regarding recent possession of stolen property. Petition at 22-23. Specifically, Woodard wanted the circuit court to read Florida Standard Jury Instruction 14.1, which states:

> Proof of possession of recently stolen property, unless satisfactorily explained, gives rise to an inference the person in possession of the property knew or should have known that the property was stolen.

Id. at 23. Woodard maintains that he had a satisfactory explanation for his possession of the stolen property and, thus, counsel should not have objected to the State's request for the instruction and should have stipulated to the

reading of the instruction. Id. at 23. Respondents contend that Woodard failed to exhaust this claim. Response at 13-14, 21-23. Woodard does not dispute that he did not raise this claim in state court but argues this failure to exhaust should be excused pursuant to Martinez. Petition at 24.

The record reflects that the State wanted to have the circuit court read the possession of recently stolen goods instruction, but the defense objected. Resp. Ex. 3 at 259-63, 266-67. The circuit court declined to read the instruction because it felt reading it would invite reversal in light of a recent First DCA opinion that certified a question concerning the instruction to the Florida Supreme Court. Id. Additionally, the circuit court believed that reading this instruction could lead the jury to discount Woodard's testimony. Id. Based on the record in this action, it does not appear that the circuit court would have read the instruction even if counsel had not objected because the circuit court was concerned about reversal. As such, Woodard's claim of prejudice is speculative and, therefore, insufficient. See Jenkins v. Comm., Ala. Dep't. of Corr., 936 F.3d 1252 (11th Cir. 2019) ("More than mere conceivability is required to establish prejudice, as element of ineffective assistance claim; the likelihood of a different result must be substantial, not just conceivable."). Moreover, as mentioned above, the jury heard evidence concerning Woodard's alleged lack of knowledge that the property was stolen, and counsel argued the same during closing arguments. Yet, despite this evidence and argument, the

jury did not accept Woodard's version of events.[11] The Court finds there is no reasonable probability the outcome of the trial would have been different because the verdict reflects that the jury did not find Woodard's explanation to be satisfactory. Moreover, had the instruction been read, it could have been harmful to Woodard's defense in that it directed the jury to accept an inference that Woodard would then have to rebut. Based on the jury's apparent rejection of Woodard's version of events, it is highly unlikely that Woodard would have been able to overcome this inference. In light of the above analysis, this claim is not substantial and is unexhausted. Accordingly, Woodard's claim for relief in Ground Five is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Woodard seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Woodard "must demonstrate that reasonable jurists would find the district court's assessment of the

---

[11] Perhaps due to the fact that Woodard's statement to police conflicted with his trial testimony or that police had recovered pawn slips that showed Foster used her driver's license to pawn other items.

constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Woodard appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of May, 2021.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:      Lester Woodard #278808
        Counsel of record